Citation Nr: AXXXXXXXX
Decision Date: 09/30/21 Archive Date: 09/30/21

DOCKET NO. 190506-20470
DATE: September 30, 2021

ORDER

Entitlement to service connection for traumatic brain injury is denied.

Entitlement to service connection for right shoulder disorder, to include rotator cuff tear, and osteoarthritis of the glenohumeral and acromioclavicular joints is denied.

Entitlement to service connection for prostate cancer, to include as secondary to exposure to herbicidal agents is denied.

FINDINGS OF FACT

1. There is no competent evidence that the Veteran has been diagnosed with a traumatic brain injury.

2. The preponderance of the evidence is against a finding that the Veteran's right shoulder disorder, to include rotator cuff tear, and osteoarthritis of the glenohumeral and acromioclavicular joints is etiologically related to service.

3. The Veteran did not have in-country service in the Republic of Vietnam.

4. The preponderance of the evidence is against a finding that the Veteran's prostate cancer was incurred in or related to active service, to include as secondary to exposure to herbicidal agents.

CONCLUSIONS OF LAW

1. The criteria for service connection for traumatic brain injury have not been met.

2. The criteria for service connection for right shoulder disorder, to include rotator cuff tear, and osteoarthritis of the glenohumeral and acromioclavicular joints have not been met.

3. The criteria for service connection for prostate cancer, to include as secondary to exposure to herbicidal agents have not been met. 38 U.S.C. §§ 1101, 5107; 38 C.F.R. § §§ 3.102, 3.303, 3.307, 3.309, 3.310.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from November 1959 to August 1963.

The Veteran testified before a Veterans Law Judge in October 2019; a transcript of the hearing is of record. 

This appeal arises under the Appeals Modernization Act (AMA). The rating action at issue is dated in August 2016, following which the Veteran submitted the proper form for appealing to the Board through the Hearing lane.

In August 2020, the Board denied the claim, which the Veteran appealed to the United States Court of Appeals for Veterans Claims (Court). In May 2021, the Court issued an order that vacated the Board decision and remanded the claim for compliance with a Joint Motion for Remand (JMR). 

The sole deficiency identified by the JMR was that the Board has not provided the representative with a copy of the transcript of the hearing in the appeal. This is true. At the time of the Board decision, the Privacy Act request by the representative was unfulfilled, and the Board's determination that the representative, by virtue of his access to VBMS, must be able to read the transcript was not a substitute for the Privacy Request. The record reflects, however, that later in August 2020 the Board, in specific response to the request for a copy of the hearing transcript, provided the representative with a copy of the entire claims file. The hearing transcript was on file at the time of fulfillment of the Privacy Act request, and the representative has not claimed that he still does not have a copy of the transcript. Even in the JMR, the wording of the parties was careful not to make any reference to what happened after the Board decision, and instead of demanding fulfillment of the request, merely demanded that the Board offer better reasons and bases to explain why it was sufficient to move forward with a decision when the representative had not received a copy of the transcript prior to the Board decision.

From the Board's review of the evidence, the Board finds that the representative was provided a copy of the hearing transcript in August 2020 (after the Board decision that was eventually vacated by the Court). Consequently, the Board will proceed with the adjudication of the claim, as not only has the representative had a copy of the hearing transcript since August 2020, he has had ample opportunity to review it and provide additional evidence and argument, including a period of at least 90 days following return of the case to the Board from the Court. 

Service Connection

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. 38 U.S.C. § 1110; 38 C.F.R. §§ 3.303 (a). To establish a right to compensation for a present disability, a veteran must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004).

Service connection may also be granted on a presumptive basis for certain diseases associated with exposure to certain herbicide agents, even where there is no record of such diseases during service, if they manifest to a compensable degree at any time after service, in a veteran who, during active military, naval or air service, served in the Republic of Vietnam during the period beginning on January 9, 1962 and ending on May 7, 1975. 38 C.F.R. §§ 3.307, 3.309. This presumption may be rebutted by affirmative evidence to the contrary. 38 U.S.C. § 1113; 38 C.F.R. §§ 3.307, 3.309.

Notwithstanding the foregoing provisions regarding presumptive service connection for exposure to herbicide agents, a veteran is not precluded from establishing service connection with proof of direct causation. Combee v. Brown, 34 F.3d 1039 (Fed. Cir. 1994).

1. Entitlement to service connection for traumatic brain injury

The Veteran contends that he has a traumatic brain injury that occurred in service. Specifically, the Veteran has reported that he was in a motor vehicle accident in Okinawa, Japan causing the truck he was riding in to roll over numerous times. (See April 19, 2016 Veteran statement). He stated that during the accident a 30-caliber machine gun hit him on the side of the head. 

Service connection may only be granted for a current disability. When a claimed condition is not shown, there may be no grant of service connection. Congress specifically limited entitlement for service-connected disease or injury to cases where the incident resulted in a disability. In the absence of proof of a present disability there can be no valid claim. 38 U.S.C. § 1110 (2012); Rabideau v. Derwinski, 2 Vet. App. 141 (1992); Brammer v. Derwinski, 3 Vet. App. 223 (1992).

The Veteran's service treatment records (STRs) are absent any finding of treatment for, or a diagnosis of, a brain injury. Post-service treatment records are also silent for a diagnosis of traumatic brain injury, in fact the Veteran has had CT scans in connection with another claim that reflect the Veteran has no evidence of traumatic brain injury. A March 2016 treatment note from Swedish Medical Center shows the Veteran had a head CT that was negative for injury or hemorrhage, and an MRI of the brain was negative for infarct or perfusion deficit. 

During the October 2019 Board hearing, the Veteran's representative noted the Veteran's STRs reflect laceration and scars of the Veteran's forehead and suggested they could be from the motor vehicle accident in service, however, a review of the STRs shows that the laceration and scar were noted on the Veteran's 1959 enlistment examination as existing prior to entry to active duty. 

In the absence of proof of a current disability, there is no valid claim of service connection. Boyer v. West, 210 F.3d 1351, 1353 (Fed. Cir. 2000); Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). The requirement that a current disability be present is satisfied when a claimant has a disability at any time during the pendency of a claim. McClain v. Nicholson, 21 Vet. App. 319 (2007).

There is no medical evidence of traumatic brain injury in VA or private treatment records. The Board has considered the Veteran's own assertions that he has a brain injury, but finds that traumatic brain injury, which involves a disease process affecting the brain, is not susceptible to lay diagnosis. Even if it were, the probative value of the Veteran's self-diagnosis is outweighed by the consistent findings of his own clinicians that he is not afflicted with the disorder. In short, there is no competent evidence that the Veteran has a traumatic brain injury.

The threshold element of a service connection claim (a current disability) has not been met; therefore, service connection for traumatic brain injury must be denied. Brammer v. Derwinski, 3 Vet. App. 223 (1992).

Accordingly, the preponderance of the evidence is against the claim for service connection for traumatic brain injury and the benefit of the doubt doctrine enunciated in 38 U.S.C. § 5107 (b) is not applicable, as there is no approximate balance of evidence. Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990); Ortiz v. Principi, 274 F.3d 1361 (Fed. Cir. 2001).

2. Entitlement to service connection for right shoulder disorder, to include rotator cuff tear, and osteoarthritis of the glenohumeral and acromioclavicular joints

The Veteran contends that his current right shoulder disability had onset in service. Specifically, he asserts that he was in a motor vehicle accident in Okinawa, Japan causing the truck he was riding in to roll over numerous times and go over a cliff. 

The Veteran's STRs show that an x-ray of the right shoulder notes that there was no "left shoulder fracture". The Board believes this was written in error as the x-ray was ordered for the right shoulder. There are no further treatment notes for the right shoulder after the incident and his August 1963 separation examination is silent for any signs, symptoms, or treatment for a right shoulder disorder.

The Veteran's post service medical records do not reflect a diagnosis of a shoulder disorder until August 2004, over 40 years after separation, when he was diagnosed with a tear of the right rotator cuff after falling in a parking lot. 

A July 2016 VA shoulder examination reflects diagnoses of rotator cuff tear, osteoarthritis of the right glenohumeral joint, and osteoarthritis of the right acromioclavicular joint. Additionally, the examiner noted a December 1960 diagnosis of right shoulder contusion. The Veteran reported he had a right shoulder surgery for a rotator cuff tear in 2009. The examiner opined that it was less likely than not the Veteran's current right shoulder disorder was in incurred in or caused by the claimed in-service event or injury. The rationale provided was that the diagnosed right shoulder contusion was an acute injury with no sequelae. The examiner notes that the STRs are silent for any additional right shoulder complaints, treatments or diagnoses following the December 1960 incident. The examiner also stated that the Veteran's 1963 separation examination makes no mention of a right shoulder condition. 

At the October 2019 Board hearing, the Veteran testified that a truck he was a passenger in lost its brakes, went over the side of the road, and rolled over resulting in a right shoulder injury. He stated that he has had pain in the right shoulder since service. The Veteran also reported that he had a post-service injury to his right shoulder stating, "I fell and hit my shoulder and a tear went all the way through." Post-service treatment records from Swedish Medical Center show that in August 2004 the Veteran underwent right shoulder rotator cuff repair surgery. 

A September 2021 private opinion notes the Veteran's in-service right shoulder contusion and the Veteran's report of right shoulder pain since service. The private medical statement also notes that the Veteran told him he was told he had a rotator cuff tear in service. The physician also notes in 2004, the Veteran fell in a parking lot, landing on his right shoulder, causing severe pain. The Veteran was seen by his private orthopedist and an MRI revealed a massive rotator cuff tear with full thickness tears of both the supraspinatus and the infraspinatus tendons. The condition worsened and on August 12, 2004 the Veteran underwent rotator cuff repair. The physician noted the Veteran did well with rehabilitation but continued to have some pain in the right shoulder. The physician noted that the Veteran told him he had a rotator cuff tear in service, however as noted above, the STRs show a diagnosis of a contusion, not a rotator cuff tear. Based on the Veteran's statements and a review of the claims file and private treatment records, the physician stated it is at least as likely as not the Veteran's current conditions are primarily service-connected disabilities caused by his truck accident while on active duty with consequent injuries to his right shoulder. 

The Board has considered the Veteran's contention that he has a current right shoulder disability that warrants service connection; however, the medical evidence does not show that the Veteran has a current right shoulder disability that had its onset in service or is otherwise related to service. Although lay persons are competent to provide opinions on some medical issues, see Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011), as to the specific issue in this case, a diagnosis and etiology of rotator cuff tear, glenohumeral osteoarthritis, and acromioclavicular osteoarthritis falls outside the realm of common knowledge of a lay person. The Board accords his statements regarding the etiology of such disorder little probative value as he is not competent to opine on a complex medical question.

Likewise, the Board assigns the September 2021 private opinion less probative weight than the July 2016 VA opinion. The private physician basically ignores any weight the interceding 2004 injury had on the Veteran's current condition and instead bases the opinion on the Veteran's report of right shoulder pain since service and the Veteran's self-report that he was told he had a rotator cuff in service, even though the Veteran's STRs show a diagnosis of right shoulder contusion. 

Additionally, presumptive service connection on the basis of a chronic condition is not available for a right shoulder disability because there is no evidence it manifested within one year after service. 

Accordingly, the preponderance of the evidence is against the claim for service connection for a right shoulder rotator cuff, osteoarthritis of the glenohumeral joint, and osteoarthritis of the acromioclavicular joint. The benefit of the doubt doctrine enunciated in 38 U.S.C. § 5107 (b) is not applicable, as there is no approximate balance of evidence. Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990); Ortiz v. Principi, 274 F.3d 1361 (Fed. Cir. 2001).

3. Entitlement to service connection for prostate cancer, to include as secondary to exposure to herbicidal agents

The Veteran contends that his prostate cancer, diagnosed in 2000, was a result of exposure to herbicide agents while he was in Okinawa, Japan.

VA has established a presumption of herbicide exposure applicable to Veterans who served in Republic of Vietnam during the Vietnam War. Specifically, a veteran who, during active military, naval, or air service, served in the Republic of Vietnam during the period beginning on January 9, 1962, and ending on May 7, 1975, shall be presumed to have been exposed during such service to an herbicide agent, unless there is affirmative evidence to establish that the veteran was not exposed to any such agent during that service. "Service in the Republic of Vietnam" includes service in the waters offshore and service in other locations if the conditions of service involved duty or visitation in the Republic of Vietnam. 38 C.F.R. §§ 3.307 (a)(6)(iii), 3.309(e). In Haas v. Peake, 525 F.3d 1168 (Fed. Cir. 2008), the Federal Circuit upheld the VA's interpretation of 38 C.F.R. § 3.307 (a)(6)(iii) as requiring proof of some duty or visitation onshore in Vietnam. Congress recently revised the meaning of service in the Republic of Vietnam in the Blue Water Navy Vietnam Veterans Act of 2019 (the BWN Act) to include veterans who served in the offshore waters of the Republic of Vietnam (essentially within the 12 nautical miles offshore of the Republic of Vietnam) during the period beginning on January 9, 1962 and ending on May 7, 1975. 38 U.S.C. § 1116A.

Service incurrence for certain diseases, including prostate cancer, will be presumed on the basis of an association with certain herbicide agents (e.g., Agent Orange). 38 U.S.C.A. § 1116; 38 C.F.R. §§ 3.307 (a)(6), 3.309(e). Such a presumption, however, requires evidence of actual or presumed exposure to herbicides. Id.

Initially, the Board finds the evidence of record does not establish that the Veteran was exposed to an herbicide agent during active duty. As a preliminary matter, the Board notes that the Veteran's service personnel records show that he served in Okinawa during the Vietnam era. The record does not reflect, and the Veteran does not contend, that he served in Vietnam, Korea, or Thailand, that his duties involved visitation to these locations, or that he had service in the Air Force or Air Force Reserve under circumstances in which he had regular and repeated contact with C-123 aircraft. As such, the provisions related to presumptive exposure to herbicide agents are not for application. See 38 C.F.R. § 3.307 (a)(6)(iii)-(v). 

Rather, the Veteran contends that he was exposed to Agent Orange in Okinawa. In that regard, he has submitted internet articles suggesting that Agent Orange was present in Okinawa as a result of contaminated military equipment from Vietnam being shipped to Okinawa. Another article describes herbicides used in Okinawa as a method of vegetation control. One article cites a prior Board decision that granted service connection for a disability due to Agent Orange exposure for another Veteran. The Veteran in that case also claimed that he was exposed to herbicides while service in Okinawa.

The records reflect that in July 2016, an administrative decision was issued for a formal finding on researching the Veteran's exposure to Agent Orange in Vietnam. Based on the Veteran's reports, and confirmation in his service personnel records, the Veteran served on the USS Paul Revere from February 7, 1961 to May 13, 1961 and July 12, 1961 to July 27, 1961. According to the Navy ships associated with Agent Orange exposure, the USS Paul Revere was in Saigon Harbor and Saigon River during May 1964 and conducted small boat troop landings at Quang Ngai Province Da Nang from August 1965 to April 1966. The Veteran was not in the Navy when the USS Paul Revere was in Vietnam as listed above. The finding notes that a JSRRC coordinator reviewed all of the Veteran's records and determined they could not confirm the Veteran was exposed to Agent Orange and any further attempts would be futile. 

Presumptive service connection is also not warranted for a chronic disease. Malignant tumors are an enumerated presumptive chronic disease under 38 C.F.R. § 3.309 (a); Walker, 708 F.3d 1331. However, the disability was not shown as chronic in service, did not manifest to a compensable degree within one year after discharge from service, and was not noted in service with attributable continuity of symptomatology thereafter. Private treatment records show the earliest evidence of the presence of a malignant tumor was in 2000, decades after the Veteran's separation from service and decades outside of the one-year presumptive period. Moreover, the evidence does not show, and the appellant does not contend, that the Veteran's prostate cancer had its onset during service and/or a continuity of symptomatology since service.

Service connection may still be granted on a direct basis; however, the preponderance of the evidence is against finding that a medical nexus exists between the Veteran's metastatic prostate cancer and an in-service injury, event or disease. 38 U.S.C. §§ 1110, 1131; Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009); 38 C.F.R. § 3.303. 

Unfortunately, there is no evidence to demonstrate that the Veteran's prostate cancer is related to his military service, except for the Veteran's assertions that it was due to exposure to Agent Orange.

Consequently, the Board finds that the absence of evidence of prostate cancer in the service or for many years later along with the positive evidence indicating he had a normal prostate prior to 2000, tends to disprove the theory that the Veteran's prostate cancer was incurred during his active military service. 

The Board has considered the Veteran's statements made in support of his claims, including his assertions that his prostate cancer is a result of Agent Orange exposure. However, he has not demonstrated any specialized knowledge or expertise indicating he is capable of rendering a competent medical opinion on the issue of causation. Although lay persons are competent to provide opinions on some medical issues, see Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011), as to the specific issues in this case, the etiology of prostate cancer and whether it was caused by his service falls outside the realm of purview of common knowledge of a lay person. Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007). In any event, absent evidence establishing in-service exposure to an herbicide agent or other indicia of prostate cancer in service or within the first post-service year, service connection is not warranted.

Accordingly, the Veteran's claim for service connection for prostate cancer must be denied. The benefit of the doubt doctrine enunciated in 38 U.S.C. § 5107 (b) is not applicable, as there is no approximate balance of evidence. Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990); Ortiz v. Principi, 274 F.3d 1361 (Fed. Cir. 2001).

 

 

Thomas H. O'Shay

Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board K. Mitchell, Counsel

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.